**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **GARY EUGENE WILHELM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:17-CV-74** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Gary Eugene Wilhelm ("Wilhelm") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Wilhelm alleges that the ALJ erred by failing to give the opinion of his treating physician proper weight, failing to properly consider his pain and credibility, and failing to perform a proper function by function analysis. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Wilhelm's Motion for Summary Judgment (Dkt. No. 11) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 13).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Wilhelm failed to demonstrate that he was disabled under

the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Wilhelm filed for SSI and DIB on September 14, 2012, claiming that his disability began on November 15, 2010. R. 44. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 113–37, 148–54. On November 10, 2015, ALJ Jeffrey Schueler held a hearing to consider Wilhelm's disability claim. R. 62–112. Wilhelm was represented by an attorney at the hearing, which included testimony from Wilhelm and vocational expert Mark Heilman. Id.

On December 29, 2015, the ALJ entered his decision analyzing Wilhelm's claim under the familiar five-step process,[2] and denying Wilhelm's claim for disability. R. 44–56. The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

found that Wilhelm suffered from the severe impairments of degenerative disc disease of the cervical spine and obesity. R. 46. The ALJ further found that Wilhelm retained the RFC to perform a range of light work, and specifically lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours and sit for 6 hours in an 8 hour workday, with the allowance to alternate between sitting and standing positions at will; never crawl or climb ladders, ropes or scaffolds; occasionally push/pull or climb ramps or stairs; frequently balance, stoop, kneel, or crouch; occasionally reach overhead and frequently reach in all other directions. R. 49. The ALJ found that Wilhelm should avoid concentrated exposure to moving machinery, heights, and hazardous machinery. Id. The ALJ determined that Wilhelm is not capable of returning to his past relevant work of mold setter/cleaner, but that he could perform other work that exists in the national economy, such as cashier and toll collector. R. 54–55. Thus, the ALJ determined that Wilhelm is not disabled. R. 56.

Wilhelm requested that the Appeals Council review the ALJ's decision and submitted additional medical records for the Appeals Council to review. R. 9–28. On January 19, 2017, the Appeals Council denied Wilhelm's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

### Treating Physician

Wilhelm asserts that the ALJ erred by failing to give greater weight to the opinion of his treating physician Bruce Mathern, M.D. I find that the ALJ properly explained the weight given to Dr. Mathern's opinion, which allows for meaningful review by the court and is supported by substantial evidence.

Wilhelm began treating with Dr. Mathern in October 2009 for headaches, left arm numbness and weakness. R. 631. Dr. Mathern diagnosed severe cervical stenosis with

significant signal changes within the cord and recommended surgery. R. 631–32.  On October

30, 2009, Wilhelm underwent an anterior cervical discectomy and fusion of C5-7. R. 604–05.

Post-surgery, Wilhelm underwent physical therapy, and on April 7, 2010, Wilhelm reported

doing very well and was pleased with his progress in physical therapy. R. 595.  He had good

strength in his upper extremities and numbness in his left hand.  Dr. Mathern released Wilhelm

to unrestricted work on May 12th. Id.

Wilhelm returned to Dr. Mathern on November 22, 2010, after a work injury,

complaining of pain and weakness in his neck and right arm. R. 327.  An MRI showed a large

cervical disc herniation at C4-5. Id.  Dr. Mathern recommended surgery, and on January 21,

2011, Wilhelm underwent an anterior cervical discectomy and fusion at C4-5. R. 543.

Wilhelm followed up with Dr. Mathern once a month from February through May 2011.

R. 319–325.  Wilhelm reported increased activity but continued to have neck pain and muscle

spasm. Wilhelm completed four sessions of physical therapy but stopped going due to pain.

Upon examination, Wilhelm had good strength, sensation and reflexes in his upper and lower

extremities, but pain on cervical range of motion. Wilhelm also had pain on extension and

decreased sensation in the third and fourth digits. Dr. Mathern suggested pain management with

injections and follow up in six months.

Wilhelm visited John Barsanti, M.D. for pain management, and received injections from

July through September 2011. R. 296–99, 301–07. Upon examination, Wilhelm consistently

demonstrated normal range of motion, aside from his neck, normal stability, strength and tone in

his neck and shoulder, normal strength and tone in his upper extremities, intact sensation, normal

posture, gait and station.  In August 2011, Dr. Barsanti wrote a letter stating that Wilhelm could

return to work on September 23, 2011. R. 301.

4

Wilhelm returned to Dr. Mathern in October 2011 and reported that the injections did not provide relief. R. 317. Wilhelm complained of significant neck pain and loss of range of motion. Wilhelm had good strength in his upper extremities and intact reflexes. Id. Dr. Mathern instructed Wilhelm to undergo a second set of injections and physical therapy. Id. Wilhelm underwent additional injections, and reported to Dr. Mathern in November 2011 that they did not provide much long-term relief. R. 315. Wilhelm had normal gait, intact sensory exam, negative straight leg raise, tenderness to palpation across his neck and shoulder, normal reflexes and strength, and weakness in his left deltoid. Dr. Mathern recommended additional physical therapy. Id.

In January 2012, Wilhelm reported that he could not go to physical therapy due to pain. R. 313. However, he reported rarely taking Percocet and occasionally taking Advil, and he drove himself to his appointment. Id. Wilhelm had good strength in his upper extremities, but tenderness and decreased range of motion in his neck and shoulder. Id. A CT scan showed status post anterior cervical fusion, with stable alignment and intact hardware. R. 335–37.

On March 9, 2012, Wilhelm underwent a Functional Capacity Evaluation with Elliot Skorupa, M.S.E.P. R. 342–53. Mr. Skorupa determined that Wilhelm could perform light physical demand work. R. 344. Specifically, Wilhelm could sit for 40 minutes and stand for 45 minutes per episode; could perform unlimited walking; unlimited fingering and occasional grasping; unlimited stair climbing and kneeling; occasional reaching to shoulder height, squatting, and stooping; no ladder climbing, and occasional pushing/pulling. He found that Wilhelm was capable of restricted overhead reaching on the right; occasionally lifting/carrying 30 pounds up to 30 inches in height; occasionally lifting 10 pounds 30-54 inches in height, but no overhead lifting. Id. On March 26, 2012, Dr. Mathern reviewed the functional capacity

examination results and agreed that they are reflective of Wilhelm's capabilities, and determined

that Wilhelm met his maximum medical improvement. R. 311.

On June 14, 2012, Dr. Mathern responded to a request from Wilhelm to clarify his

functional capacity evaluation results, and stated that he could perform light physical demanding

work under the US Department of Labor's criteria. R. 330.  Dr. Mathern also added that due to

residual weakness and ongoing pain in Wilhelm's right upper extremity, he should not perform

repetitive movements of the right upper extremity even at nominal and minimal weights. R. 331.

Dr. Mathern concluded that Wilhelm was capable of "mainly sedentary type work, which does

not require repetitive use of your right arm pain, and which does not require any component of

lifting, carrying or reaching." Id.

Wilhelm continued to treat with Dr. Mathern every six months. R. 493.  Dr. Mathern

recommended no driving in heavy traffic alone. R. 494.  In April 2013, Wilhelm continued to

complain of neck pain and restricted range of cervical motion.  Examination showed good

strength in his upper extremities, intact sensation, intact reflexes, normal station and gait, no

evidence of myelopathy, restricted range of motion and tenderness to palpation along his neck.

R. 486.

On May 6, 2013, state agency physician James Darden, M.D., reviewed the record and

determined that Wilhelm could lift/carry 20 pounds occasionally and 10 pounds frequently;

stand/walk/sit for 6 hours in an 8 hour workday; occasionally push/pull with the right arm; never

crawl or climb ladders, ropes or scaffolds; occasionally reach overhead with the right arm;

frequently handle with the right hand; and must avoid concentrated exposure to extreme cold,

wetness and hazards. R. 118–19.  On February 21, 2014, state agency physician J. Astrue, M.D.,

reviewed the record and agreed with Dr. Darden, with the additional limitations of limited

overhead reaching with both arms; frequent balancing, stooping, kneeling and crouching; occasionally climb ramps and stairs; and avoid concentrated exposure to hazards. R. 132–34.

On April 1, 2014, Dr. Mathern completed a checkbox Cervical Spine Medical Source Statement. R. 1191. Dr. Mathern indicated that Wilhelm had 50% range of motion in his cervical spine, and no other objective signs or findings. R. 1191–92.  He concluded that Wilhelm could sit for 30 minutes at a time; stand for 29 minutes at a time; stand/walk for 4 hours and sit for 4 hours in an 8 hour workday; lift 10 pounds occasionally and 20 pounds rarely; and did not need an assistive device. R. 1193–94.  Dr. Mathern found that Wilhelm could rarely look down, turn his head, look up or hold is head in a static position, never crouch/squat or climb ladders, and rarely twist, stoop or climb stairs, but does not have significant limitations with reaching, handling or fingering. R. 1194. Dr. Mathern determined that Wilhelm would need an "unknown" amount of unscheduled breaks, would be off task 20 percent of the workday but was capable of low stress work. R. 1195.

On February 12, 2014, Wilhelm underwent a consultative examination with William S. Mercer, P.T. R. 1123–25.  Mr. Mercer determined that Wilhelm has limited range of motion in both shoulders and restricted cervical range of motion. R. 1124.  He could grip 66 pounds in his right hand and 80 pounds in his left and could reach forward and overhead to 90 degrees. Wilhelm bent at the waist to produce more than 70 pounds of trunk flexion; could squat, kneel and crawl; had good balance; and could tandem walk and stand. R. 1125.  Wilhelm lifted 30 pounds from floor to waist, carried 40 pounds at the waist; lifted 35 pounds from waist to shoulder; and pushed and pulled 30 pounds with an overhead limit of 22 pounds. Id.  He ambulated slowly without an assistive device.  Mercer noted some symptom exaggeration with his cervical and upper extremity testing. Id.

Wilhelm returned to see Dr. Mathern on October 27, 2014, complaining of new issues with pain and rage of motion in his right shoulder, pain in his left shoulder, crepitus in his neck, loss of range of motion and neck pain. R. 1201. Wilhelm reported using pain medication "intermittently." Id. On exam, Wilhelm had loss of range of motion of the shoulder secondary to mechanical pain in the shoulder joint itself, and paraspinous muscle pain on the left. Otherwise he had good strength in the upper and lower extremities. Id. Dr. Mathern recommended seeing an orthopedist for his shoulder.

Wilhelm visited orthopedist Christopher John, M.D., on March 25, 2015, for complaints of right shoulder pain. R. 1255. Upon examination, Wilhelm had normal cervical spine range of motion, no shoulder asymmetry, normal contour and no swelling. R. 1257. He had range of motion on right side of 160 degrees forward elevation, 140 degrees abduction, and 60 degrees external rotation. Wilhelm did not have impingement or neurogenic compression signs, and his strength was 5/5 with normal sensation. Id. On his left side, Wilhelm had normal range of motion, provocative tests, strength and sensibility. R. 1257–58. X-rays showed no acute injury, mild degenerative changes to the AC joint, no narrowing of the acromiohumeral space, but axillary view revealed joint to be concentrically reduced. R. 1258. Dr. John's impression was right shoulder rotator cuff tendonitis, possible mild arthritis. Id. Dr. John noted his "suspicion" that "he has pain over the AC joint with sleeping or has a small partial RTC tear. Certainly no profound weakness." Id. On April 6, 2015, Dr. John declined to fill out a questionnaire from Wilhelm's attorney, noting that he is not comfortable saying that patient is disabled because his issue is more cervical spine related and he has minimal shoulder impingement, if any. R. 1260.

Dr. Mathern continued to see Wilhelm in April and October 2015. In April, Wilhelm reported taking Percocet as needed, rating his pain as 5/10 at its worst with activity. R. 1279.

8

Wilhelm declined an injection and "continues to work with trying to be as active as possible." Id.  In October 2015, Wilhelm reported that his symptoms are unchanged with significant neck pain that radiates down his left arm and difficulty sleeping or doing physical activity. R. 1298. He occasionally takes Percocet, and also complained of pain in his hips. Id.  On exam, Wilhelm had good upper extremity strength, tenderness and parasthesias in the neck shoulders and upper arm, limited cervical range of motion and decreased reflexes. R. 1299.

On June 20, 2015, Dr. Mathern completed a second checkbox opinion, noting that Wilhelm had tenderness, muscle weakness, sensory loss, reflex loss, motor loss, drops things and reduced grip strength. R. 1266.  He indicated that Wilhelm had limited cervical range of motion, but did not specify the amount, and circled that Wilhelm had an inability to concentrate. R. 1267. Dr. Mathern determined that Wilhelm  could walk 3 city blocks without severe pain, sit for 15 minutes at a time, stand for 20 minutes at a time; stand/walk for less than 2 hours and sit for less than 2 hours in an 8 hour workday; lift and carry 10 pounds occasionally; and lift 20 pounds rarely. R. 1268. Dr. Mathern checked that Wilhelm would need unscheduled breaks during a working day, must be able to shift positions at will from sitting, standing or walking, and would be off task 20% of the day. R. 1268–70.

Wilhelm asserts that Dr. Mathern's opinion that he is capable of a range of sedentary work is entitled to great weight by the ALJ.  When developing Wilhelm's RFC, the ALJ reviewed the medical treatment records set forth above, and the opinions of Mr. Skorupa, Mr. Mercer, Dr. Mathern and the state agency physicians. R. 49–54.

The ALJ gave Mr. Skorupa's functional capacity evaluation finding that Wilhelm was capable of performing light physical capacity work significant weight, noting that "[a]lthough the records show the claimant has clear difficulties with neck pain, he retained capacity to

perform activities of daily living, mow his yard on a riding lawn mower, and help around the
home with household chores (Exhibits 1F and 8F)."

The ALJ noted that Dr. Mathern later provided a summary medical statement regarding
Skorupa's functional capacity evaluation and indicated that it found that Wilhelm is capable of
sedentary physical demand work which would not require repetitive use of his right arm and did
not require any component of lifting, carrying or reaching. The ALJ gave this "summary" less
weight, because it is inconsistent with the findings set forth in Skorupa's functional capacity
evaluation. R. 53.

The ALJ considered Mr. Mercer's consultative medical evaluation and gave it significant
weight, finding it consistent with a light exertional residual functional capacity. R. 53.

The ALJ considered Dr. Mathern's additional opinions, and gave them less weight,
stating:

> While these opinions are from a treating source, they are inconsistent with the
> medical evidence and with the assessments provided by the consultative examiner
> (Mr. Mercer) and with the functional capacity evaluation (performed by Mr.
> Skorupa).  Dr. Mathern's conclusion is not consistent with the claimant's
> testimony that he can do many activities and get through a normal day with
> various breaks to relieve pain.  Indeed, his opinion is far more disabling than what
> the claimant asserted at the hearing, and is also inconsistent with the medical
> evidence of record.  As such, lesser weight is assigned to Dr. Mathern's opinion,
> given inconsistence with the objective findings noted in treatment records
> outlined above.

R. 54.

When making an RFC assessment, the ALJ must assess every medical opinion received
into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ
give the opinion of a treating source controlling weight if he finds the opinion "well-supported
by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with
the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must

give "good reasons" for not affording controlling weight to a treating physician's opinion. 20

C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 WL 1229781, at *2 (S.D.W. Va.

March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is

not deserving of controlling weight, the following factors must be considered to determine the

appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of

examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by

medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating

physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted

or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v.

Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v.

Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam).

    While an ALJ is under no obligation to accept any medical opinion, he or she must

explain the weight afforded to each opinion.  See Monroe v. Colvin, 826 F.3d 176, 190–91 (4th

Cir. 2016). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's

assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin,

607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.

2012)).  However, if the ALJ does not adequately explain the weight given to each medical

opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted.

Monroe, 826 F.3d at 190.

    The Fourth Circuit recently clarified the level of explanation required by the ALJ to

sufficiently support the weight given to a medical opinion. See Brown v. Comm'r, 873 F.3d 251,

268 (4th Cir. 2017); Monroe, 826 F.3d at 189–91. The ALJ must provide a narrative discussion

describing how the evidence in the record supports each of his conclusions, citing specific

medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case to that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2016)).

Here, the ALJ provided a detailed explanation of the weight given to Dr. Mathern's opinions, which allows for meaningful review and is supported by substantial evidence. With regard to Dr. Mathern's "summary" of the functional capacity evaluation, the ALJ correctly gave it less weight because it was inconsistent with Mr. Skorupa's findings. Specifically, Skorupa determined that Wilhelm could perform light work, including occasionally carrying 30 pounds; occasionally lifting up to 30 pounds up to 30 inches; occasionally lifting 10 pounds 30-54 inches; no lifting above 54 inches; and limited overhead reaching on the right. R. 344. This does not match Dr. Mathern's "summary" that Wilhelm cannot perform "any component of lifting, carrying, or reaching." R. 331.

Further, as the ALJ noted, Dr. Mathern's opinions placed significantly more restrictive limitations on Wilhelm's activities than Mr. Skorupa's functional capacity evaluation and Mercer's consultative examination, both of which relied upon objective tests and findings. While Dr. Mathern determined that Wilhelm could only occasionally lift 10 pounds and rarely

12

lift 20 pounds, both Skorupa and Mercer found that Wilhelm could occasionally lift 30 pounds. Mercer's examination revealed that Wilhelm could lift 30 pounds from floor to waist, carrying 40 pounds at the waist, lift 35 pounds from wait to shoulder and push and pull 30 pounds with an overhead limit of 22 pounds. R. 1125. Dr. Mathern's opinion as to Wilhelm's postural limitations also conflicted with Mercer's findings that Wilhelm could bend at the waist, squat, kneel, and crawl, and Skorupa's findings that Wilhelm could perform unlimited stair climbing and kneeling and occasional squatting and stooping. R. 344, 1125. The ALJ also noted that Dr. Mathern's restrictions are inconsistent with the medical evidence. Indeed, Dr. Mathern's treatment notes reflect that Wilhelm suffered from loss of cervical range of motion and complaints of pain and tenderness. However, he consistently had good strength in his upper and lower extremities, intact reflexes, generally intact sensation, normal gait, posture, and station. Thus, the ALJ properly relied upon the records and objective findings of Skorupa and Mercer to discount Dr. Mathern's conclusions.

Dr. Mathern's opinions were also inconsistent with Wilhelm's testimony with regard to his daily activities. Wilhelm testified that he performs light chores around the home, yard work and occasionally goes fishing. He testified that he performs normal daily activities such as maintaining personal care, going outside, driving, riding with others, shopping, managing the household finances, hunting, and cutting wood. R. 89–93. Wilhelm also reported on his application for benefits that he had no significant cognitive problems while performing normal daily activities, he had good capacity for handling stress, adapted to change adequately, and could follow spoken and written directions. R. 240–45.

Wilhelm argues that Dr. Mathern's opinions are supported by both clinical and laboratory findings and are consistent with other substantial evidence in the record, and thus, the ALJ

13

should have given his opinions greater weight. Pl. Br. Summ. J. p. 23.  Wilhelm asserts that Dr. Mathern's opinions are consistent with his treatment notes, the consultation report completed by Mercer, the FCE completed by Skorupa, and Wilhelm's testimony. Id.  Wilhelm's arguments do not illustrate an error in the ALJ's analysis, but rather simply disagree with the ALJ's conclusions.  "[W]e may not reweigh this evidence, and we must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether [the claimant] was disabled." Sharp v. Colvin, 660 Fed. Appx. 251, 258 (4th Cir. 2016).

Overall, the ALJ's assessment of the medical opinions in the record allows the court to meaningfully review the weight given to each opinion and the ALJ's ultimate conclusions.  The ALJ gave specific weight to each opinion contained in the record and provided additional explanation as to how that weight was assessed.  The ALJ's explanation of the degree of weight he gave the conflicting medical opinions includes the required "narrative discussion describing how the evidence supports each conclusion ...." Mascio, 780 F.3d at 636.; see also Sharp, 660 Fed. Appx. at 257 (finding the ALJ's explanation that "the claimant's reported limitations were not supported by [the treating physician's] office notes" was sufficient to allow meaningful review as required by Mascio because the ALJ relied on and identified a particular category of evidence.) Thus, the ALJ sufficiently explained his reasons for giving less weight to the opinions of Dr. Mathern, and such reasons are supported by substantial evidence in the record.

## Evaluation of Pain and Credibility

Wilhelm also asserts that the medical evidence corroborates his statements regarding his pain and functional limitations, and the ALJ incorrectly discounted his credibility. Pl. Br. Summ. J. p. 24.  Wilhelm's subjective allegations of pain and limitations are not conclusive.  Rather,

under the two-step credibility analysis,[3] the ALJ must examine all of the evidence, including the objective medical record, and determine whether Wilhelm met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and persistence of the claimed symptoms and their effect upon Wilhelm's ability to work. Id. at 594–95. If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

"[T]he ALJ must 'build an accurate and logical bridge from the evidence to his conclusion that [the claimant's] testimony was not credible…'" Brown v. Comm'r, 873 F.3d at 269 (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). In Brown, the Court held that the ALJ erred by discounting the claimant's credibility based upon daily activities without acknowledging the limited extent of those activities as described by Brown or explain how those activities showed that he could sustain a full-time job. Id. at 269. The Court also found that the

---

[3] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16–3p was issued after the ALJ's consideration of Wilhelm's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility. See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Wilhelm's report of his own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

ALJ erroneously relied upon his own observations and medical judgments in finding that

Brown's pain was not as limiting as he claimed because he could sit through the ALJ's hearing,

take a psychological test and manage his own money. Id. at 271.

Here, the ALJ followed the required two step process and determined first that there is an

underlying medically determinable physical impairment(s) that could reasonably be expected to

produce Wilhelm's symptoms, such as pain. R. 50. See SSR 96–7p, at *1.  The ALJ set forth

Wilhelm's subjective complaints about the intensity, persistence and limiting effects of his

symptoms in detail in his opinion.  R. 49.  He noted that Wilhelm testified that he suffered

debilitating pain and loss of use of his right arm, and can stand and sit for short durations of time

but has to lie down and rest during a normal day to relieve pain and fatigue. Id.  Wilhelm

indicated that he generally avoids the use of pain medications unless absolutely needed and

testified that he has problems with sleeping, appetite, sustaining focus, concentration, energy and

motivation due to chronic pain. Id.  Wilhelm also testified that his memory is good. Id.   After a

review of Wilhelm's treatment records and allegations of disability, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds the claimant's
> medically determinable impairments could reasonably be expected to cause the
> alleged symptoms.  However, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not entirely credible for the
> reasons explained in this decision.

R. 50.   The ALJ also examined Wilhelm's testimony about his daily activities, and stated:

> The Claimant testified he performs light chores around the home, yard work and
> on occasion goes fishing, but cited that his neck pain usually increases throughout
> the day.  He acknowledged a varied routine of normal daily activities including
> maintaining personal care, going outside, driving, riding with others, shopping,
> managing the household finances, hunting, cutting wood, and talking on the
> phone.  He cited no social or interpersonal problems while performing daily
> activities and that he generally gets along with others well.  The claimant reported
> during the application process that he experienced no significant cognitive
> problems while performing normal daily activities.  He also explained that he
> generally retained good capacity for handling stress; adapted to changed [sic]

adequately; could generally follow spoken and written directions; but, noted his capacity for attention, concentration, and task completing depended on the various circumstances.

R. 54. Wilhelm alleges that the ALJ's characterization of his testimony is inaccurate because he

testified that he has significant difficulty performing household chores, and testified that he can

only wash a few dishes and only run the dust mop for a short period of time. R. 89.  Wilhelm

also points to his testimony that while mowing he must take frequent breaks (R. 90–91); requires

assistance with driving more than short distances and grocery shopping; no longer hunts; and

rarely cuts wood with a chainsaw. R. 89–99.  Wilhelm asserts that the medical evidence

corroborates his allegations and testimony. Pl. Br. Summ. J. p. 26.

Here, unlike in Brown, the ALJ properly considered Wilhelm's alleged daily activities

along with the other evidence in the case. When discussing Wilhelm's testimony about his daily

activities the ALJ did not ignore Wilhelm's testimony with regard to pain.  Specifically, the ALJ

noted, "[t]he claimant testified he performs light chores around the home, yard work, and on

occasion goes fishing, but cited that his neck pain usually increases throughout the day." R. 54.

The ALJ found that Wilhelm's testimony about his limitations was not fully supported by the

evidence as a whole, including his daily activities. The ALJ outlined his reasons for this

determination, noting:

> [T]he medical evidence is not supportive of disability based upon the clinical findings and the totality of the evidence.  The above residual functional capacity is supported by some of the claimant's own subjective allegations, the relatively benign objective findings both prior to and after the alleged onset date, the conservative degree of treatment the claimant has received and the record as a whole which does not exhibit the types of medical treatment one would expect for a totally disabled individual.

R. 54.

17

It is apparent that the ALJ reviewed the medical record regarding Wilhelm's impairments in detail and measured his statements about the severity of his symptoms and limitations against the objective medical evidence.  This is not a case where the ALJ improperly substituted his own observations and medical judgments in place of the record evidence. Considering Wilhelm's treatment notes, together with the medical opinions, substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Wilhelm's statements regarding the extent of his limitations.  It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996);  see also Sharp v. Colvin, 660 Fed. Appx. at 258 ("We may not reweigh this evidence, make credibility determinations, or supplant the ALJ's judgment with our own.") (internal citations omitted.) The ALJ's evaluation of Wilhelm's symptoms is supported by substantial evidence, and the court will not disturb it.

**Function by Function**

Wilhelm also asserts that the ALJ failed to determine how his multiple severe impairments affect his ability to work on a function by function basis.  Specifically, Wilhelm asserts that the ALJ erred by failing to make specific findings regarding his manipulative limitations, his need to lie down and rest during the day, and the frequency he would be absent from work.

A function by function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work.  Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his

conclusion, discuss the individual's ability to perform sustained work activities in an ordinary

work setting on a regular and continuing basis, describe the maximum amount of each work-

related activity the individual can perform, and explain how any material inconsistencies or

ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

     In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ

does not perform an explicit function-by-function analysis," agreeing instead with the Second

Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity

to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d at 636 (citing

Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was

necessary, in part, because the ALJ failed to indicate the weight given to two residual functional

capacity assessments which contained relevant conflicting evidence regarding the claimant's

weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3

(N.D.W. Va. Apr. 29, 2015).

     Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and

contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ

in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to

guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a

detailed summary of Wilhelm's medical records, the medical opinions, Wilhelm's hearing

testimony and the ALJ's conclusions. R. 49–54. The ALJ considered the conflicting medical

opinions in the record and explained the weight given to each opinion. Further, the RFC

delineates Wilhelm's exertional limitations, including amounts of weight Wilhelm can lift and/or

carry, amounts of time that he can perform activities such as standing, walking, and reaching,

hazards he must avoid, and required breaks. R. 49.  Thus, the ALJ satisfied his responsibility

under SSR 96-8p.

## **CONCLUSION**

For the reasons set forth above, I **RECOMMEND** that an order be entered

**AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

defendant, **DENYING** Wilhelm's motion for summary judgment, and **DISMISSING** this case

from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United

States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation which must be filed within fourteen (14) days

hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not

specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual

recitations or findings as well as to the conclusion reached by me may be construed by any

reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Enter: March 22, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge